IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

UNITED STATES OF AMERICA,    )
    )
    Petitioner,    )    Civil Case No. 3:23-mc-00007
v.    )
    )    By: Elizabeth K. Dillon
SENTARA HEALTHCARE,    )    United States District Judge
HOWARD KERN,    )
MICHAEL DUDLEY, and    )
JAMES JUILLERAT,    )
    )
    Respondents.    )

**MEMORANDUM OPINION**

This enforcement matter arises out of an ongoing False Claims Act (FCA) investigation of Sentara Healthcare (Sentara) by the United States Attorney's Office and the Department of Justice. The government is investigating whether Sentara made materially false statements in health insurance rate filings for the 2018 and 2019 plan years for the Affordable Care Act (ACA) individual health insurance marketplace in Virginia and submitted false claims for Advanced Premium Tax Credits (APTCs) to the federal government. (Pet. For Enforcement 1, Dkt. No. 1.) The United States issued to Sentara a number of Civil Investigative Demands (CIDs) for oral testimony and documents relating to the market rate filings, and Sentara has generally complied with these demands. (*Id.* at 8.) The government claims, however, that Sentara has refused to comply with four CIDs requesting documents and oral testimony from several former and current Sentara employees. (*Id.* at 14–15.) The United States brought this action to compel Sentara's responses to these CIDs. (*Id.*) Sentara opposes the government's petition and has filed several motions to seal the pleadings and related exhibits in this matter (Dkt. Nos. 9, 20, and 36). The court temporarily sealed pleadings and related exhibits pending argument on the same. Sentara also filed a motion to close the courtroom for a hearing on these matters. (Dkt. No. 46.)

The court held a hearing on these issues, and they are now ripe for resolution.  For the reasons stated on the record at the hearing,[1] the court denied the motion to close the courtroom generally (Dkt. No. 46), but it took the motion under advisement in part to allow counsel to request that the courtroom be closed for the discussion of specific exhibits or arguments. Pursuant to this ruling, the court allowed bench conferences for sensitive matters.  For the following reasons, the court will grant the United States' petition for enforcement (Dkt. No. 1) and grant in part and deny in part Sentara's motions to seal (Dkt. Nos. 9, 20, 36).

## I.  BACKGROUND

The United States has been investigating Sentara under the FCA since 2021, and Sentara has provided voluminous documents and many depositions over the course of the investigation. (Pet. 8.)  In May 2021, the government issued CID No. 21-337 for all documents relating to the 2018 and 2019 ACA market rate filings as well as Sentara's corporate and organizational structure.  (*Id.* at 7.)  Later that year, Sentara named several document custodians including Michael Dudley, the former president and CEO of Sentara, and James Juillerat, Sentara's current chief actuary.  (*Id.* at 8.)  As noted at the hearing, Sentara produced many documents in response to that CID.  On March 22, 2022, Sentara represented to the government that all documents had been produced regarding Juillerat (Exhibit C, Dkt. No. 4-2), and on April 4, 2022, that all documents had been produced regarding Dudley (Exhibit D, Dkt. No. 4-3).  Following Sentara's represention in August 2022 that all responsive documents had been produced, the government issued CIDs for the oral testimony of several custodians, including Dudley and Juillerat.[2]  (Pet.

---

[1]  Many of these reasons also support the court's ruling regarding the sealing of documents.

[2]  CID Nos. 22-1024 and 22-1026, respectively.

8.)  The United States took sworn testimony of Juillerat on December 8, 2022, and of Dudley on June 12, 2023.  (*Id.*)

In June 2023, the United States noticed that Sentara was relying upon documents that had not been previously produced to the government.  Sentara then began producing thousands of additional documents (somewhere between 2,100 and 2,800 new documents (about 8,000 pages)) after conducting a "re-review" of its records.  While Sentara claims that many of these documents were not responsive to the government's original request for documents in CID No. 21-337 but were either duplicative or "relevant to Sentara's defenses" (*Id.* at 12; Ex. G 1, Dkt. No. 4-6), it admitted at the hearing that some of the documents were non-duplicative, relevant, and responsive to the CIDs.  According to the government, the new records contain "important details requiring further investigation," including additional sworn testimony from Dudley and Juillerat.  (Pet. 10.)  The new documents also make extensive mention of Howard Kern, Sentara's president and CEO during the time in question, whom Sentara had not previously identified as a custodian.  (*Id.* at 11.)

The United States issued two new CIDs for Kern's responsive documents and sworn testimony.[3]  (*Id.* at 14.)  The government has also requested Dudley and Juillerat's further testimony as a continuation of their previous testimony under CID Nos. 22-1024 and 22-1026, but Sentara has not yet complied.  (*Id.* at 14–15.)  In light of Sentara's noncompliance, the United States filed a Petition for an Order to Show Cause and for Summary Enforcement of the CIDs on November 13, 2023.  (*See generally* Pet.)  During the pendency of this petition, Sentara has agreed to comply with the United States' demands for Kern's responsive documents and

---

[3]  CID Nos. 23-1221 and 23-1222, respectively.

sworn testimony, leaving at issue only the CIDs demanding Dudley and Juillerat's continued sworn testimony.  (US's Reply 2, Dkt. No. 43.)

The government also filed a motion to temporarily seal the exhibits attached to the petition "until such time as the Respondents may note their position on the sealing of the exhibits."  (US's Mot. to Seal 1, Dkt. No. 2.)  Sentara then filed several motions to seal the following: (1) the petition and the accompanying exhibits (Dkt. No. 9),[4] (2) Sentara's own response to the petition (Dkt. No. 20), and (3) all future briefings in this matter (Dkt. No. 36).

## II.  DISCUSSION

### A.  Petition for Enforcement

#### 1.  Legal standards

The FCA empowers the Attorney General or his or her designee to issue a CID requesting documents, responses to interrogatories, or deposition testimony.  31 U.S.C. § 3733(a)(1).  When a CID recipient "fails to comply with any civil investigative demand issued under subsection (a) . . .  the Attorney General may file, in the district court of the United States for any judicial district in which such person resides, is found, or transacts business, and serve upon such person a petition for an order or such court for the enforcement of the civil investigative demand."  31 U.S.C. § 3733(j)(1).  Courts treat CIDs as if they were administrative subpoenas, meaning that the court's role in enforcing CIDs is "sharply limited."  *United States v. Markwood,* 48 F.3d 969, 975 (6th Cir. 1995); *EEOC v. City of Norfolk Police Dep't*, 45 F.3d 80, 82 (4th Cir. 1995).  A CID will be enforceable if the government can show the investigation has a "legitimate purpose" and the CID "may be relevant to that purpose."  *Markwood*, 48 F.3d at 978.  Further, courts must enforce CIDs when: (1) the issuing agency has the authority to engage

---

[4]  Sentara designates this as its response to the United States' request for Sentara's position on sealing the petition's exhibits.

in the investigation; (2) the issuing agency has complied with the statutory requirements of due process; (3) the information sought is reasonably relevant to the investigation; and (4) the information sought is not unduly burdensome.[5]  *In re Civ. Investigative Demand 15-439*, 2016 WL 4275853, at *3 (citing *E.E.O.C. v. Ranstad*, 685 F.3d 433, 442 (4th Cir. 2012)); *EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 476 (4th Cir. 1986).

## 2.  Agency authority and undue hardship

While Sentara argued in its briefing that the United States had no authority to issue the CIDs, it conceded at the hearing that it is not pursuing this argument.  (*See* Sentara's Resp. 20, Dkt. No. 19; Hr'g. Tr. 56:23–25, Dkt. No. 64.)  Sentara also argued in briefing that the government's purported lack of authority somehow causes the CIDs to be "overly broad" and "unduly burdensome."  (Sentara's Resp. 20–21.)  It is unclear whether Sentara intended to also concede this point when it made its concession on the government's authority; regardless, the court does not accept Sentara's line of reasoning.  As the Fourth Circuit has found, "[t]he burden of proving that an administrative subpoena is unduly burdensome is not easily met.  The party subject to the subpoena must show that producing the documents would seriously disrupt its normal business operations."  *N.L.R.B. v. Carolina Food Processors, Inc.*, 81 F.3d 507, 513 (4th Cir. 1996) (quoting *Maryland Cup Corp.*, 785 F.2d at 477.  Sentara has made no such showing.

## 3.  Relevance of the CIDs

The government further contends that the testimony sought is "reasonably relevant to the United States' investigation and is necessary because Sentara failed to produce all responsive records for each witness prior to the government taking their sworn testimony."  (Pet. 21.)

---

[5] Sentara does not dispute that the government has complied with the statutory requirements of due process.

Generally, "[f]or purposes of an administrative subpoena, the notion of relevancy is a broad one." *Sandsend Fin. Consultants Ltd. v. Fed. Home Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989). An agency "can investigate merely on the suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Morton Salt Co.*, 338 U.S. 632, 642 (1950). "So long as the material requested 'touches a matter under investigation,' an administrative subpoena will survive a challenge that the material is not relevant." *Sandsend*, 878 F.2d at 882 (quoting *EEOC v. Elrod*, 674 F.2d 601, 613 (7th Cir. 1982)).

The United States represents that the newly produced documents "include important details requiring further investigation" and are "material to the core issues under investigation." (Pet.10; US's Reply 5, Dkt. No. 39.) The government further contends that "over 150 of the documents Sentara produced after Mr. Dudley's sworn testimony on June 12 relate to Mr. Dudley. Similarly[] . . . over 1,200 of these newly produced responsive documents involve Mr. Juillerat." (Pet. 14–15.) Sentara conceded at the hearing that some of the newly produced are non-duplicative, relevant, and responsive.[6] As discussed above, the court in its "sharply limited" role need merely find that the government's investigation has a legitimate purpose and that the CIDs at issue are reasonably relevant to that purpose. *Markwood*, 48 F.3d at 975. The information the government is seeking from Dudley and Juillerat certainly "touches a matter under investigation" as it is material to the insurance rate filings at the center of the government's investigation. *Sandsend*, 878 F.2d at 882. The court finds that the government's

---

[6] Sentara has also provided the government with another reason for not complying with the government's CIDs, writing in email correspondence that "[t]he Department has more than sufficient information in its possession to make [a] decision . . . and it should do so without any more delay or expense to the subjects of this investigation." (Ex. M 3, Dkt. No. 4-12.) Sentara did not pursue this argument at the hearing, and, regardless, it is not part of the court's inquiry.

requests for Dudley and Juillerat's continued oral testimony are reasonably relevant to its investigation.

### 4. Procedural concerns

At the hearing, Sentara focused its argument on an alleged government violation of the CID statute's (31 U.S.C. § 3773 (a)(2)(G)) requirement that a new civil investigative demand for oral testimony must be authorized by the Attorney General before oral testimony may be required of Dudley and Juillerat because they have already been deposed under the CIDs for which the government seeks enforcement. Sentara states that it would now comply with new CIDs, if authorized by the Attorney General, but it does not believe that a continuation of depositions under the previously issued CIDs is allowed.

The government represented that it seeks only to supplement the previous depositions of Dudley and Juillerat based upon the newly produced documents for the same general purpose and primary areas of inquiry provided in the previously issued CIDs. The need for additional testimony arises from the failure of Sentara to produce all of the requested documents prior to the depositions, despite a representation to the contrary. Sentara insists that the failure to produce all of the documents was inadvertent in this complex matter and that it has cooperated and produced many documents. The court has no reason to doubt these representations, but it makes no matter here. The need for a continuation of the previously held depositions arises from the production of the new documents.

The decision in *United States v. Hines*, No. 8:18-mc-83, 2019 WL 4491313 (M.D. Fla. Aug. 14, 2019), *report and recommendation adopted*, No. 8:18-mc-83, 2019 WL 4479314 (M.D. Fla. Sept. 18, 2019), supports the government's request to enforce the CIDs. In that case, a CID recipient failed to produce requested documents before his testimony, but the government took

7

his testimony anyway and reserved the right to resume the testimony; the recipient eventually provided the documents.  When the government later decided to take additional testimony, it filed an enforcement petition asking the court to enforce the *original* CID.  *Id.* at *2.  The magistrate judge found that the government had the authority to issue the CID and that the information sought from the witness was relevant to that investigation.  *Id.* at *8–9.  The district judge ordered that the original CID be "enforced *as issued*" and did not require the issuance of a new CID.  *United States v. Hines*, 2019 WL 4479314 at *1 (M.D. Fla. Sept. 18, 2019) (emphasis added).  The court will follow a similar approach here and not require the government to issue new CIDs for Dudley's and Juillerat's testimony.

The United States has shown, and Sentara has conceded, that it has the authority to conduct an FCA investigation of Sentara's rate filing practices in 2018 and 2019, and the court finds that Dudley and Juillerat's testimony is reasonably relevant to that purpose and not unduly burdensome.  For these reasons, the court, cognizant of its "sharply limited" role in enforcing CIDs, will grant the United States' petition to enforce CIDs 22-1024 and 22-1026 and order that Dudley and Juillerat comply with the government's requests for their continued testimony.

## B.  Motions to Seal

### 1.  Legal standards

Although the district court's authority and discretion to seal judicial records or documents is well established in the Fourth Circuit, the court may do so only "if the public's right of access is outweighed by competing interests."  *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000) (quotations omitted).  Because public access advances judicial integrity and serves the public interest, access "may be abrogated only in unusual circumstances."  *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 182 (4th Cir. 1988).  *See also Doe v. Public Citizen*, 749 F.3d

246, 266 (4th Cir. 2014).  The party seeking the sealing of documents bears the burden of overcoming the right of access to the documents.  *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 578 (4th Cir. 2004).

There are two sources for the public's right of access to court documents – the common law and the First Amendment.  *Id.* at 575.  "The common law presumes a right to inspect and copy judicial records and documents."  *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F2d 178, 180 (4th Cir. 1988) (citing *Nixon v. Warner Commc'ns., Inc.*, 435 U.S. 589, 597 (1978)).  This presumptive right to judicial documents can be "rebutted only by showing that countervailing interests heavily outweigh the public interests in access."  *Doe v. Public Citizen*, 749 F.3d 246, 264 (4th Cir. 2014).  Courts have also noted that the public interest is at its apex when the government is a party to the action.  *Id.* at 271. Likewise, the First Amendment guarantees access but only "to particular judicial records and documents."  *Id*. at 180; *see, e.g.*, *In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986) (First Amendment right of access applies to criminal plea and sentencing hearings); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252–53 (4th Cir. 1988) (same as to filings related to summary judgment); *but see Craddock v. LeClairRyan*, No. 3:16-cv-11, 2019 WL 2437460, at *6–7 (E.D. Va. June 11, 2019) (First Amendment right of access does *not* apply to arbitration awards, but common law right does).  In the civil context, there is very little caselaw about application of the First Amendment right of access other than summary judgment motions.  When the First Amendment provides a right of access to records, that right may only be overcome by a "compelling government interest" and only if the denial of access is "narrowly tailored to serve that interest."  *Doe,* 749 F.3d at 266.

Usually, the distinction between the rights of access afforded by the common law and the First Amendment is "significant" because the common law "does not afford as much substantive

protection to the interests of the press and the public as does the First Amendment." *In re Baltimore Sun Co.*, 886 F.2d 60, 64 (4th Cir. 1989); *Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249, 253 (4th Cir. 1988).  Because of this distinction, the district court is generally directed to first "determine the source of the right of access with respect to each document . . . [so it] then can it accurately weigh the competing interests at stake." *Stone v. Univ. of Md. Med. Sys. Corp.,* 855 F.2d 178, 181 (4th Cir. 1988).

Upon determining the source of the right of access, a district court may seal court documents once it has "(1) provided public notice of the request to seal and allow[ed] interested parties a reasonable opportunity to object, (2) consider[ed] less drastic alternatives to sealing the documents, and (3) provide[ed] specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives."[7] *Ashcraft*, 218 F.3d at 302.

## 2. Source of the right of access

The government argues that the First Amendment provides the source of the right of access because the government is a party.  It further argues that the court need not decide this constitutional issue because Sentara cannot overcome its burden under the less demanding common law standard.  Sentara makes no argument regarding the source of the right of access.

Because there is no caselaw applying the First Amendment as a source of access in CID matters and in accordance with the doctrine of constitutional avoidance, the court first analyzes the matter under the common law standard.  As noted below, because Sentara cannot meet the common law standard for most of the documents, the court has no need to analyze the matter under the more demanding First Amendment standard.[8]

---

[7] The docket in this case provided public notice.

[8] As the Supreme Court has recognized, "It is a well[-]established principle governing the prudent exercise of . . . jurisdiction that normally [a federal court] will not decide a constitutional question if there is some other

10

### 3. Sentara has not presented countervailing interests that heavily outweigh the public interests in access that would justify Sentara's broad sealing request

Sentara asks that the court seal the government's petition, all exhibits to the petition, Sentara's response and exhibits thereto, and the government's reply to Sentara's response.  It argues that without the sealing of the documents it will suffer reputational damage and that the Federal Claims Act supports the sealing of documents.  It further argues that the petition is overly broad in certain of its disclosures and that at least some of the exhibits should be sealed.

Sentara first contends that making the pleadings here publicly available would have "damaging implications" and that the petition causes harm "by alerting the public and the press to damaging allegations that the Government maintains it has not yet fully investigated." (Sentara's Mem. in Supp. of First Mot. to Seal 4–5, Dkt. No. 10.)   Courts have found several factors associated with reputational damage that weigh in favor of sealing court documents: "(1) where disclosure may be used to gratify private spite or promote public scandal, (2) where disclosed records may serve as reservoirs of libelous statements for press consumption, or (3) where disclosure might reveal trade secrets[.]" *Under Seal v. Under Seal*, 326 F.3d 479, 485–86 (4th Cir. 2003) (citing *Nixon*, 435 U.S. at 598–99).  Sentara claims that the petition includes sensitive business information and that government is using the petition to stir up public sentiment against Sentara.  (*Id.* at 6.)  The United States responds that the petition does not contain any trade secrets or otherwise confidential information that would disadvantage Sentara in the market.  (US's Resp. to First Mot. to Seal 6, Dkt. No. 23.)  The government further contends that the circumstances surrounding the rate filings at issue here are already well-known

---

ground upon which to dispose of the case." *Escambia Cnty. v. McMillan*, 466 U.S. 48, 51 (1984) (citing *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)).

to the public and have been covered by the press.[9]  (*Id.* at 7.)  The court agrees that the unsealing of this matter would not reveal trade secrets, cause further damage to Sentara's reputation, or stir up any public scandal.  Given that the issues have already been publicized, it appears whatever damage that may come from the disclosure of the United States' investigation has already been done.  Moreover, most of the disclosures were necessary for the United States to seek the relief requested.

Sentara also supports its arguments regarding possible reputational harm by pointing to the routine sealing of *qui tam* cases, noting that the seal is used "to [both] permit the United States to investigate the allegations" and "to protect the reputation of a defendant in that the defendant is named in a fraud action brought in the name of the United States, but the United States has not yet decided whether to intervene."  *ACLU v. Holder*, 673 F.3d 245, 250 (4th Cir. 2011).  But *qui tam* actions and CID proceedings are statutorily distinct.  *Qui tam* actions are *brought under* the FCA,[10] while 31 U.S.C. § 3733 sets forth the CID regulations.  This is not a *qui tam* action.  It is a procedure to enforce CIDs, and the CID regulations do not include any confidentiality requirement.  Rather, the statute specifically provides for the public use of material obtained from a CID in enforcement proceedings.

Indeed, the "official use" provision of the CID statute—which the United States relies upon—authorizes the government to introduce CID documents and transcripts "into the record of a case or proceeding; applications, motions, memoranda and briefs submitted to a court or other tribunal" and "in connection with any such case or proceeding as such [DOJ] attorney determines

---

[9]  *See, e.g.,* Sandy Hausman, *Consumers Complain of Massive Health Insurance Hikes*, WTVF (Apr. 12, 2018, 4:24 PM), https://www.wvtf.org/news/2018-04-12/consumers-complain-of-massive-health-insurance-hikes; Lisa Provence, *Out of pocket*, C-VILLE WEEKLY (Dec. 6, 2023, 5:00 AM), https://www.c-ville.com/out-of-pocket.

[10]  *See* 31 U.S.C. § 3730(b).

to be required." 31 U.S.C. § 3733(l)(8); § 3733(i)(3).  The United States contends that the transcript excerpts included in the petition satisfy the "official use" exception because the excerpts "directly addressed the issue underpinning the Petition to Enforce: the relevance of Howard Kern's documents and testimony[.]"  (US's Opp'n to First Mot. to Seal at 8, Dkt. No 23.)

In a similar case, *United States v. Bechtold*, No. 3:22-MC-18, 2022 WL 3137950 (N.D. Fla. June 13, 2022), the respondents filed a motion to strike or seal a portion of the government's enforcement petition that purportedly conveyed the government's opinions of the merits of its FCA investigation in a way that put the respondents in a negative light and included purportedly confidential information.  *Id.* at *2.  The government opposed this request, asserting, as the United States does here, that nothing in the CID statute prohibits the government from simply explaining its investigation and "judicial opinions resolving disputes over CIDs routinely include a summary of the Government's allegations and the basis for the FCA investigation."[11]  *Id.*  The court ultimately denied the motion to strike/seal.  *Id.* at 3.  Though the government in *Bechtold* did not explicitly invoke the "official use" exception as it does here, *Bechtold* is analogous to the present matter.  Here, the petition contains information that Sentara considers negative and confidential but that the government contends is simply being used to explain the reason for the petition.  The United States' inclusion in the petition of excerpts from Dudley's testimony and other information obtained from CIDs was done to demonstrate the need for the enforcement measures for which it has petitioned.  Thus, with only a few exceptions addressed later, the court finds that the information falls under the "official use" exception and need not be kept under seal.

---

[11]  See, e.g., *United States v. Kamal Kabakibou, MD, PC,* 522 F. Supp. 3d 1307, 1309 (N.D. Ga. 2020); *United States v. Witmer*, 835 F. Supp. 208, 211−12 (M.D. Pa. 1993).

### 2.  Sentara's arguments regarding negotiations between the parties

Sentara next contends that the petition "implicates information covered by settlement discussions" in violation of Federal Rule of Evidence 408.  Sentara points to Exhibit G (Dkt. No. 4-6), an email chain referencing negotiations, as particularly violative of Rule 408.  (Sentara's First Mot. to Seal 6.)  The government asserts that the petition does not violate Rule 408 since it "at no point seeks to use the evidence to prove or dispute the validity or amount of a disputed claim, or to impeach Sentara's witnesses."  (US's Resp. to First Mot. to Seal at 12.)  The court finds that disclosures of exhibits regarding negotiations does not violate Rule 408.  However, the court also finds that disclosures of the particulars of any negotiations, other than mere references to negotiations, would reveal sensitive matters that should be kept confidential and are not necessary to the court's determination of the issues before it.  The parties' interests in confidential negotiations outweigh the public interest in access to these documents.  Therefore, the court will maintain the seal, and/or redact, certain of the documents listed below.

### 3.  Assessment of countervailing interests and sealing factors

The determination of whether countervailing interests heavily outweigh the public's interests in access to judicial records is up to "the sound discretion of the court [considering] the relevant facts and circumstances of the particular case."  *Washington Post*, 386 F.3d at 575 (quoting *Nixon,* 435 U.S. at 598–99).  The court finds Sentara has not shown that its interests regarding sealing all requested documents wholly outweigh the public's right of access to this matter.  Regarding certain exhibits, or portions thereof, however, countervailing interests do outweigh the public's interest.  Exhibits containing the content of the government's investigation, and not the mere logistics of requesting and receiving information, are properly sealed.  While the exhibits were appropriately attached to the various pleadings, some of them

contain detailed information revealed in the investigation comingled with the logistics of producing the same.  For the most part, it is the logistics that are key to the petition before the court.  The substance of the pending investigation, however, should remained sealed because of the harm that could result to all parties if disclosed now.  The substance of the investigation includes the testimony witnesses (other than the brief excerpt included in the petition), interrogatories and other questions posed by the government, and Sentara's responses thereto.

When deciding whether to grant a motion to seal, the court also must determine whether there are less drastic alternatives to sealing.  Here, the court has reviewed each document that has been filed under seal.  Only a few documents will remain entirely sealed because redaction is not an appropriate alternative to sealing.  The remaining documents that contain, in part, matters that should be sealed will be redacted as an alternative to sealing the documents.

Thus, for the foregoing reasons, the court will grant Sentara's motions to seal (Dkt. Nos. 9, 20, 36) in part and deny the motions in part.  All documents except those listed below shall be public documents on the court's docket and shall be unsealed:

Dkt. No. 4-8, Exhibit I – 2023 email thread – REDACT (regarding negotiations and specific document requests)

Dkt. No. 4-14, Exhibit O – Dudley deposition transcript excerpt – SEAL

Dkt. No. 19-2, Exhibit 1 – 2021 email thread – REDACT (regarding data extraction information, current set, and term revisions)

Dkt. No. 19-5, Exhibit 4 – 2022 email thread – REDACT (regarding specifically requested information and answers thereto)

Dkt. No. 19-8, Exhibit 7 – 2022 email thread – REDACT (regarding testimony and specifically requested information)

15

Dkt. No. 19-10, Exhibit 9 – 2023 emails re negotiations – SEAL

Dkt. No. 19-11, Exhibit 10 – CID No. 23-1222 and interrogatories – REDACT (regarding interrogatories)

Dkt. No. 19-13, Exhibit 12 – 2023 email thread – REDACT (regarding negotiations and specific areas of questioning for witnesses)

Dkt. No. 19-14, Exhibit 13 – Responses to interrogatories – SEAL

## III.  CONCLUSION

For the foregoing reasons, the court will grant the United States' petition for enforcement and grant in part and deny in part Sentara's motions to seal.  An appropriate order will be entered.

Entered: March 8, 2024.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge